J-S02037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALLAN LESLIE SINANAN JR. | : | |
| | : | |
| Appellant | : | No. 498 EDA 2021 |

Appeal from the PCRA Order Entered February 17, 2021
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0000169-2017,
CP-48-CR-0004301-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALLAN LESLIE SINANAN JR. | : | |
| | : | |
| Appellant | : | No. 499 EDA 2021 |

Appeal from the PCRA Order Entered February 17, 2021
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0000169-2017,
CP-48-CR-0004301-2016

BEFORE:  OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED JANUARY 6, 2023**

J-S02037-22

Allan Leslie Sinanan, Jr. (Appellant) appeals *pro se* from the orders[1] entered in the Northampton County Court of Common Pleas, dismissing his first, timely Post Conviction Relief Act[2] (PCRA) petition. A jury convicted Appellant of eight counts each of possession of a controlled substance and possession with intent to deliver (PWID), three counts of criminal use of a communication facility, and one count of possession of drug paraphernalia.[3] The court sentenced him to an aggregate term of 11 to 22 years' incarceration. Appellant now raises a myriad of ineffective assistance of counsel claims. After careful review, we affirm.

As the parties are well acquainted with the facts of this case, which are fully set forth in the PCRA court's February 17, 2021, order, we need not recite

_____

[1] Appellant filed two separate notices of appeal for both criminal dockets. Therefore, he has complied with **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (separate notices of appeal must be filed when a single order resolves issues arising on more than one trial court docket), *overruled in part*, **Commonwealth v. Young**, 265 A.3d 462, 477 (Pa. 2021) (reaffirming that Pa.R.A.P. 341 requires separate notices of appeal when single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate court to consider appellant's request to remediate error when notice of appeal is timely filed). On June 14, 2021, Appellant filed a *pro se* application for consolidation. This Court granted the order on July 12, 2021. **See** Order Granting Application for Consolidation, 7/12/21.

[2] 42 Pa.C.S. §§ 9541-9546.

[3] 35 P.S. §§ 780-113(a)(16), (30); 18 Pa.C.S. § 7512(a); 35 P.S. § 780-113(a)(32), respectively.

- 2 -

them herein.  ***See*** Order, 2/17/21, at 2-3.[4]  The pertinent procedural history is as follows.  Appellant was charged at Criminal Docket No. CP-48-CR-4301-2016 (Docket No. 4301-2016) with three counts of PWID, three counts of possession of a controlled substance, and three counts of criminal use of a communication facility.  Additionally, he was charged at Criminal Docket No. CP-48-CR-0169-2017 (Docket No. 169-2017) with five counts of PWID, five counts of possession of a controlled substance, one count of drug paraphernalia, and one count of possession of a firearm prohibited.[5]  ***Id.*** at 1-2.

Appellant was represented by several attorneys throughout various stages of the criminal proceeding.  Assistant Public Defender Rory B. Driscole, Esquire, represented him at both of his preliminary hearings.  ***See*** Order, 2/17/21, at 3.  Appellant requested that Attorney Driscole be removed from the matter, and the court eventually granted his request *via* a motion to withdraw by counsel.  ***See id.*** at 3-4.  Then, Alexander J. Karam, Jr., Esquire, was appointed to represent Appellant.  ***See id.*** at 4.  Attorney Karam filed two pre-trial motions, including a motion to suppress, but Appellant expressed dissatisfaction with his representation as well.  ***See id.***  Attorney Karam also

_____

[4] The PCRA court's February 17, 2021, Order is, in actuality, a 60-page opinion which addresses Appellant's PCRA claims.

[5] ***See*** 18 Pa.C.S. § 6105(a)(1).  The firearms possession offense was subsequently *nolle prossed*.

- 3 -

filed a motion to withdraw, which was granted. *See id.* Consequently, Brian M. Monahan, Esquire, was assigned as legal counsel. *See id.* Attorney Monahan represented Appellant at the suppression hearing. *See id.* However, shortly before his trial, Appellant "expressed his reluctance to move forward with Attorney Monahan and requested another attorney." *Id.* at 5. The trial court held a hearing regarding the matter, and denied Appellant's request to appoint new counsel. *See id.*

Appellant's jury trial began on September 6, 2017. Two days later, the jury convicted him of all charges. On September 22, 2017, the court imposed the following sentence: (1) at Docket No. 4301-2016, Appellant received a six-to-12-month sentence on each count of possession of a controlled substance; 12 to 24 months on each count of PWID, and 12 to 24 months on each count of criminal use of a communication facility; and (2) at Docket No. 169-2017, Appellant received 5 to 10 years on the count of PWID (cocaine), 27 to 33 months on the count of PWID (methylenedioxy-methamphetamine or MDMA), six to 12 years on the count of PWID (Oxycodone), 12 to 18 months on the count of PWID (Xanax), six to 16 months on the count of PWID (marijuana), and six to 12 months on each of the five counts of possession of a controlled substance. Appellant also received a sentence of probation on the charge of possession of drug paraphernalia. All of the sentences were to run concurrent to each other, with the exception of two PWID counts (cocaine and Oxycodone), which were to run consecutive to each other and to all other

counts. Appellant subsequently "filed post-sentence motions and requested that he represent himself moving forward." **See** Order, 2/17/21, at 5. On October 11, 2017, Attorney Monahan filed a motion to withdraw as counsel. The court held a **Grazier**[6] hearing and permitted counsel to withdraw and Appellant to proceed *pro se*. **See id.**

Appellant filed a direct appeal with this Court,[7] which affirmed his judgment of sentence on January 23, 2019. **See Commonwealth v. Sinanan**, 578 EDA 2018 (unpub. memo.) (Pa. Super. Jan. 23, 2019). The Pennsylvania Supreme Court denied Appellant's subsequent petition for allowance of appeal on January 7, 2020, and the United States Supreme Court denied his petition for writ of *certiorari* on March 9, 2020. **See Commonwealth v. Sinanan**, 305 EAL 2019 (Pa. Jan. 7, 2020), *cert. denied*, 140 S.Ct. 1546 (U.S. 2020).

On February 5, 2020, Appellant filed a "Motion to Address Illegal Sentence," which the court treated as a first PCRA petition and appointed counsel. **See** Order, 2/17/21, at 5-6. Thereafter, Appellant filed numerous

---

[6] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) (requiring on the record inquiry to determine whether waiver of counsel is knowing, intelligent, and voluntary).

[7] Appellant raised four claims concerning the trial court's purported failure to suppress certain evidence and the search warrant.

*pro se* supplemental motions[8] relating to requests for "PCRA relief and relief from a collateral forfeiture action by the Commonwealth." *Id.* at 6 (footnote omitted). "As a general[ ] summary, in his various filings [Appellant] raised ineffective assistan[ce] of counsel claims against each of his appointed attorneys, in addition[ ] he raised claims of various constitutional violations committed by the Commonwealth including attacking his warrantless arrest, the issuance of the search warrant, and the quality of the evidence introduced against him at trial." *Id.* The PCRA court held another *Grazier* hearing on June 22, 2020, and granted Appellant "relief by allowing him to proceed by self-representation." *Id.* at 6-7.

The PCRA court held an evidentiary hearing on October 9, 2020. At the proceeding, Appellant and all three of his past attorneys appeared and testified. *See* Order, 2/17/21, at 7. Thereafter, Appellant continued to inundate the court with numerous *pro se* filings.[9] On February 17, 2021, the PCRA court dismissed Appellant's petition. Appellant timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On March 22, 2021, the court filed a Pa.R.A.P.

---

[8] A review of the docket reveals that from the date Appellant filed his PCRA petition to the day of the evidentiary hearing, Appellant submitted approximately 30 motions and petitions with the PCRA court.

[9] Appellant filed approximately ten additional motions with the court.

- 6 -

1925(a) opinion, which relied, in part, on its February 17, 2021, order. *See*

PCRA Ct. Op., 3/22/21, at 1-2.

Appellant raises the following issues for our review:

1) Whether the findings of the "P.C.R.A. Court" are supported by the record and free of legal error, where all three trial counselors were ineffective, for failure to present argument and defense to [Appellant]'s warrantless arrest and the lack of probable cause, because under the United States and Pennsylvania Constitutions: (1) [Appellant] was improperly stopped and searched, requiring suppression of any evidence seized as a result of the search and (2) the police action was not based on an exception to the requirement that an ARREST be based on a WARRANT issued by a neutral magistrate, after a determination that probable cause has been demonstrated?

2) Whether the "P.C.R.A. Court" erred, by failing to adequately address a P.C.R.A. petition when it dismissed the petition, and that such error requires relief, where all three trial counselors were ineffective in neglecting to assert under the United States and Pennsylvania Constitutions: (1) that the prosecution and the magistrate circumvented policy and procedure, where procedural due process protections preclude prosecutors and magistrates from establishing a prima facie case at a Preliminary Hearing utilizing only hearsay testimony evidence that would not be admissible at trial, and (2) is therefore categorically incapable of demonstrating that the prosecution later will be able to prove [Appellant]'s guilt beyond a reasonable doubt?

3) Whether the findings of the "P.C.R.A. Court" are supported by the record; free of legal error; and adequately addressed when it dismissed the petition, where all three trial counselors were ineffective, for failing to move to suppress all evidence obtained from the Warrantless Arrest Affidavit (11/04/2016); Search Warrant Affidavit (11/04/2016); and the Warrantless Arrest Affidavit (12/27/2016), arguing that Officers established the Affidavits in violation of "Franks V. Delaware" because: (1) the Affiant omitted material information about the reliability of the unregistered confidential source, who was the primary source of the information, used to establish probable cause; (2) the Affiant omitted material facts to surveillance, video, and cell phone evidence, with the intent to make the affidavit misleading; and (3)

the Affiant included material information knowingly and intentionally, to a bag/jacket with drugs, being thrown on November 4th, the day of arrest?

4) Whether the "P.C.R.A. Court" erred, by failing to adequately address a P.C.R.A. petition when it dismissed the petition, and that such error requires relief, by neglecting [Appellant]'s claim, of whether [Appellant] received ineffective assistance of trial counsel, where "Brian M. Monahan," failed to impeach DEA Agent Joseph Labenberg, by introducing his testimony at trial from an earlier hearing (Suppression/Habeas Corpus), in which DEA Agent Joseph Labenberg gave two different testimonies to material evidence?

5) Whether the "P.C.R.A. Court" erred, by failing to adequately address a P.C.R.A. petition when it dismissed the petition, and that such error requires relief, by neglecting [Appellant]'s claim, of whether "Brian M. Monahan", was ineffective for failing, to object to the admission of Detective Michael Mish's expert testimony, regarding the fact to whether drugs were actually distributed and whether it was witnessed by the detectives on three . . . occasions; and was "Brian M. Monahan", ineffective for intentionally eliciting Detective Michael Mish's otherwise inadmissible expert testimony at trial, that the jacket and everything in it was [Appellant's], because that expert testimony was unduly prejudicial?

6) Whether the findings of the P.C.R.A. Court are supported by the record and free of legal error, where defense counsel "Brian M. Monahan" was ineffective, for failing to object to the admission of police testimony at trial, regarding allegedly being familiarized with [Appellant] in prior investigations going back to 2007, was prejudicial as it raised an adverse inference of guilt?

7) Whether the "P.C.R.A. Court" erred, by failing to adequately address a P.C.R.A. petition when it dismissed the petition, and that such error requires relief, where trial counselors "Alexander J. Karam Jr. and Brian M. Monahan," were ineffective for failing to make a suppression motion with an argument that would have been meritorious, that since the police knew of the presence of the four . . . automobiles in question and planned all along to seize all four . . ., there were no exigent circumstances or automobile exception justifying their failure to obtain a valid warrant, and the fruit of the unconstitutional seizure of the four . . . automobiles

- 8 -

were inadmissible, and that the doctrine of plain view could not justify the police seizure of [Appellant]'s four . . . automobiles under the circumstances of the present case?

8) Whether the "P.C.R.A. Court" erred, by failing to adequately address a P.C.R.A. petition when it dismissed the petition, and that such error requires relief, where [Appellant] should be awarded a New Trial, because the recantation of silence by Detective Brent Lear at the Forfeiture Hearing, fits squarely within the test for non-***Brady***[10] after-discovered evidence claim, and it is clear that Detective Brent Lear's silence about these facts throughout Pre-Trial testimony was due solely to ineffective assistance of trial counsel?

9) Whether the findings of the "P.C.R.A. Court" are supported by the record and free of legal error, where trial counselor "Brian M. Monahan" was ineffective, for failing to object to an illegal sentence, because the P.W.I.D. drug convictions under [Docket No. 169-2017], had to merge for sentencing purposes to 42 Pa.C.S. § 9765?

10) Whether the findings of the "P.C.R.A. Court" are supported by the record and free of legal error, where trial counselor "Brian M. Monahan" was ineffective, for failing to do basic legal research and to object to erroneously calculated prior record score, as. it pertains to prior New Jersey, Pennsylvania, and Federal offenses?

Appellant's Brief at viii – xii (some bracketing omitted).

We begin with our well-settled standard of review:

Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations.

_____

[10] ***Brady v. Maryland***, 373 U.S. 83 (1963).

*Commonwealth v. Timchak*, 69 A.3d 765, 769 (Pa. Super. 2013) (citation omitted). Moreover, because Appellant's claims concern ineffective assistance of counsel, we consider the following:

> Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have refined the *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] performance and prejudice test into a three-part inquiry. *See* [*Commonwealth v.*] *Pierce*[, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Charleston*, 94 A.3d 1012, 1019 (Pa. Super. 2014) (citation omitted). Moreover, "[a] court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first." *Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014) (citation omitted).

At the outset, we emphasize that "[a]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, a *pro se* appellant enjoys no special benefit." **Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017). As such, "any layperson choosing to represent [himself] in a legal proceeding must, to some reasonable extent, assume the risk that [his] lack of expertise and legal training will prove [his] undoing." **Commonwealth v. Rivera**, 685 A.2d 1011, 1013 (Pa. Super. 1996) (citation omitted). Here, we point out that Appellant's lengthy brief consists of long-winded and, at times, disjointed, accusations of PCRA court error, which focus more on the underlying argument than developing any ineffective assistance of counsel analysis.

Additionally, before we may dispose of Appellant's substantive claims, we must address several appellate procedural concerns. First, Appellant's brief, excluding exhibits, is 90 pages long and does not contain a word count. This is an obvious and blatant violation of Pennsylvania Rule of Appellate Procedure 2135, which states, in relevant part:

**(a)** Unless otherwise ordered by an appellate court:

(1) A principal brief shall not exceed 14,000 words. . . . A party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages . . . when prepared on a word processor or typewriter.

\* \* \*

**(d) Certification** of compliance. Any brief in excess of the stated page limits shall include a certification that the brief complies with

the word count limits. The certificate may be based on the word count of the word processing system used to prepare the brief.

Pa.R.A.P. 2135(a)(1), (d).[11]

Notably, Appellant's brief does not contain "a certificate of compliance with the word count limit," as required by Rule 2135(a)(1) and (d).[12] "The certification requirement is not limited to counsel: *Pro se* litigants, too, are obliged to provide a certification for a primary brief that exceeds thirty pages." **Commonwealth v. Spuck**, 86 A.3d 870, 873 (Pa. Super. 2014) (citation omitted).

Moreover, Pennsylvania Rule of Appellate Procedure 2101 "underscores the seriousness with which we take deviations from our rules of procedure." **Vurimindi**, 200 A.3d at 1041 n.19. Rule 2101 states: "Briefs . . . shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief . . . of the appellant and are

---

[11] As this Court has previously noted:

Former Rule 2135 limited an appellate brief to 50 pages. It was changed in 2013 to limit the number of words in the principal brief to 14,000 and in the reply brief to 7,000. If a principal brief exceeds 30 pages, or a reply brief exceeds 15 pages, the brief must contain a certificate of compliance with this Rule.

**Commonwealth v. Vurimindi**, 200 A.3d 1031, 1041 n.19 (Pa. Super. 2018).

[12] Additionally, it is worth mentioning Appellant failed to attach his court ordered concise statement to his brief. **See** Pa.R.A.P. 2111(a)(11).

substantial, the appeal or other matter may be quashed or dismissed." Pa.R.A.P. 2101.[13]  Indeed, we could dismiss Appellant's appeal for his lengthy brief alone.

Nevertheless, we continue to our second observation — the question of whether Appellant has complied with Pennsylvania Rule of Appellate Procedure 1925(b).  Appellant's concise statement consists of ten issues and is 37 pages in length.[14]  **See** Pa.R.A.P. 1925(b) Statement, Errors Complained of on Appeal, 3/15/21.

This Court has previously recognized that "Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." **Kanter v. Epstein**, 866 A.2d 394, 400 (Pa. Super. 2004) (citation omitted).  "The

---

[13] As emphasized by the Pennsylvania Supreme Court:

> The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.  Thus, we reiterate that compliance with these rules by appellate advocates who have any business before our Court is mandatory.

**Commonwealth v. Briggs**, 12 A.3d 291, 343 (Pa. 2011).

[14] It merits mention that the concise statement reads like an appellate brief with analysis following every issue.

- 13 -

[concise s]tatement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). Nevertheless, the filing of a timely concise statement alone "does not automatically equate with issue preservation." *Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007). Moreover, "[e]ven if the trial court correctly guesses the issues [a]ppellant raises on appeal and writes an opinion pursuant to that supposition, the issue[s are] still waived." *Commonwealth v. Heggins*, 809 A.2d 908, 911 (Pa. Super. 2002) (citation omitted).

> As the *Tucker* Court opined:
>
> [T]his Court has held that when appellants raise an outrageous number of issues in their [Rule] 1925(b) statement, the appellants have deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues they [now] seek to raise. We have further noted that such voluminous statements do not identify the issues appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) make[ ] the raising of so many issues impossible. Further, this type of extravagant [Rule] 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues.

*Id.* at 346 (citations & internal quotation marks omitted; some brackets in original). As such, "the [Rule] 1925(b) statement must be sufficiently concise and coherent such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith." *Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 210 (Pa. Super. 2008). *See also Vurimindi*, 200 A.3d at 1038-43 (applying *Kanter, Tucker*,

- 14 -

and ***Jiricko*** to a criminal matter); ***Commonwealth v. Juray***, 275 A.3d 1037, 1041 n.4 (Pa. Super. 2022) (same).

Here, the PCRA court found that Appellant's concise statement was "overly prolix[,]", and it was "unable to easily decipher the complaints and/or respond with any reasonable detail." ***See*** PCRA Ct. Op., 3/22/21, at 1. The court further stated:

> However, upon cursory review of . . . Appellant's [concise statement], we note that the [s]tatement contains ten sections, some of which apparently blend multiple complaints. Much of Appellant's complaints were carefully analyzed in our 60 page Order denying PCRA relief and require no further support. Other sections of Appellant's [s]tatement appear to contain extensive legal argument, address the weight of trial evidence and testimony, or address the District Attorney's forfeiture petition which was resolved under a different docket number in a civil action. We submit that those complaints are not appropriate for including in Appellant's [Rule] 1925(b) [s]tatement. We submit that any claim[s] not raised at the PCRA hearing or addressed in Appellant's PCRA brief are waived on [a]ppeal.
>
> Finally, we feel comfortable that our 60 page Order of February 17, 2021 carefully analyzed and addressed all cognizable constitutional issues properly raised at the PCRA hearing and/or argued in Appellant's PCRA brief. No further support is necessary.

***Id.*** at 1-2.

We agree with the PCRA court's findings. Nevertheless, we will not dismiss Appellant's brief at this time, as the violations do not substantially impede our ability to conduct meaningful and effective appellate review. ***See Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived").

Nevertheless, we warn Appellant against violating our appellate rules in the future.

We have reviewed the parties' briefs, the relevant law, the certified record, and the PCRA court's February 17, 2021, order. We conclude that Appellant is entitled to no relief, and the PCRA court's order correctly disposes of Appellant's properly preserved issues[15] on appeal, especially considering his sparse ineffective assistance of counsel analysis. Therefore, we affirm on the basis of the court's order and adopt it as our own. In any future filing with this or any other court addressing this decision, the filing party shall attach a copy of the PCRA court's February 17, 2021, order.

Accordingly, we affirm the PCRA court's orders dismissing Appellant's petition and denying him any relief.

Lastly, Appellant filed two applications for relief with this Court on August 22, 2022, and December 12, 2022 — both generally requesting that a ruling be made in this appeal. Based on our decision, we deny those applications as moot.

Orders affirmed. Applications for Relief (8/23/22 & 12/13/22) denied as moot.

_____

[15] We note that issues two, four, five, and seven are either not cognizable under the PCRA or waived for failure to properly preserve them with the PCRA court. **See** 42 Pa.C.S. § 9543(a)(2) (setting forth types of cognizable errors for which PCRA provides relief); **see also** 42 Pa.C.S. § 9544(b) (waiver); Pa.R.A.P. 302 (waiver).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2023

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY**
**COMMONWEALTH OF PENNSYLVANIA**
**CRIMINAL DIVISION – LAW**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA,** | **No.: CP-48-CR-4301-2016** |
| **vs.** | **CP-48-CR-0169-2017** |
| **ALLAN LESLIE SINANAN, JR.,** | |
| **Defendant.** | |

## ORDER OF COURT

**AND NOW**, this 17 day of February, 2021, after a PCRA hearing on Allan Leslie Sinanan, Jr.'s ("Petitioner") PCRA Petition, and careful review the Petition and the arguments presented in the parties' briefs, it is hereby **ORDERED** that Petitioner's PCRA Petition, is **DISMISSED.**

## STATEMENT OF REASONS

On November 4, 2016, Petitioner was arrested, and subsequently charged in a Criminal Information docketed as CR-4301-2016 with three counts of Delivery of a Controlled Substance (Cocaine) pursuant to 35 P.S. § 780-113(a)(30), three counts of Possession of a Controlled Substance (Cocaine) pursuant to 35 P.S. § 780-113(a)(16), and three counts of Criminal Use of a Communication Facility pursuant to 18 Pa.C.S.A. § 7512(a). In a second Criminal Information docketed as CR-0169-2017, Petitioner was charged with five counts of Possession of a Controlled Substance with Intent to Deliver pursuant to 35 P.S. § 780-113(a)(30) [PWI Cocaine (52.77 grams); PWI MDMA Ecstasy (47.44 grams); PWI Oxycodone

1

(215 pills); PWI Xanax (61 pills); PWI Marijuana (66.36 grams)], five counts of Possession of a Controlled Substance pursuant to 35 P.S. § 780-113(a)(16), one count of Possession of Drug Paraphernalia pursuant to 35 P.S. § 780-113(a)(32), and one count of Possession of a Firearm Prohibited pursuant to 18 Pa.C.S.A. § 6105(A)(1).

Petitioner's arrest stems from a drug task force operation. The task force was comprised of a Special Agents from the federal agency known as the Drug Enforcement Administration (DEA), law enforcement officers of the Northampton County Drug Task Force, and the Palmer Township Police Department.

In July 2016, DEA special agent, Officer Vasa Faasuamalie received information that the Petitioner was trafficking narcotics in Northampton County. Thereafter, three (3) controlled purchases from Petitioner took place on August 3, 2016, August 17, 2016, and on August 31, 2016. The purchases were arranged through Daniel Skodocek, a confidential informant, and set up via telephonic communication. All three purchases were for two (2) grams of cocaine in exchange for two hundred ($200) dollars and each purchase was surveilled by the task force.

On November 4, 2016, Officer Faasuamalie, Special Agents of the DEA, and other task force officers were surveilling Petitioner's home located at 914 South 25th Street with the intention to detain Petitioner once he came outside. After the Petitioner exited his home and moved to his automobile,

2

the officers/agents approached the Petitioner. As they approached Petitioner, Petitioner was seen throwing what looked like a black bag onto the porch area outside of his residence. Thereafter, the Petitioner was arrested, taken into custody for the three controlled purchases, and transported to the Palmer Township Police Department. Thereafter, the task force obtained a search warrant from Magisterial District Justice Jacqueline Taschner to search Petitioner's residence and garage units. Upon execution of the search warrant at his home, the task force seized what they thought was the black bag, which was actually Petitioner's jacket. The officers discovered multiple controlled substances and packaging paraphernalia inside the jacket compartments. Additional controlled substances were found on Petitioner after an inventory search of his person at the Palmer Township Police Department. All items believed to be narcotics were sent to a lab which yielded positive results.

By way of background, Petitioner had several attorneys who represented him at various stages of his criminal proceedings. A theme echoed throughout this litigation is that Petitioner was never satisfied with any of his attorneys.

Initially, Assistant Public Defender Rory B. Driscole ("Driscole") represented the Petitioner during both of Petitioner's preliminary hearings. Both sets of charges were subsequently bound over to the Northampton County Court of Common Pleas. Thereafter, Petitioner requested the

3

removal of Attorney Driscole. Mr. Driscole then filed a motion to withdraw as counsel, which was ultimately granted after a hearing.

Thereafter, Attorney Alexander J. Karam, Jr. ("Karam"), a member of the Northampton County Conflicts Team, was then appointed to represent Petitioner. On May 17, 2017, Attorney Karam filed omnibus pre-trial motions on behalf of the Petitioner seeking to suppress evidence recovered from the Petitioner on the ground that law enforcement officers lacked sufficient probable cause needed to justify the issuance of a search warrant. The next day, on May 18, 2017, Attorney Karam filed a second pre-trial motion which sought nominal bail. Apparently, Petitioner also had an issue with Attorney Karam's representation; this lack of a meeting of the minds prompted Attorney Karam to file a motion to withdraw as counsel which was granted shortly after the filing of pre-trial motions. As a result, Attorney Brian M. Monahan ("Monahan"), a senior member of Northampton County's Conflicts Team and an ex-Chief Public Defender for Northampton County, was assigned as Petitioner's legal counsel. Attorney Monahan represented Petitioner at the suppression hearing.

Petitioner was unable to obtain a bail amount which he was able to post.

The omnibus motions were denied by the Honorable Emil Giordano on July 26, 2016.

4

Shortly before Petitioner's trial commenced, Petitioner expressed his reluctance to move forward with Attorney Monahan and requested another attorney. A hearing was held, after which we denied Petitioner's request to appoint new counsel. Attorney Monahan represented Petitioner at trial.

Petitioner's jury trial commenced on September 6, 2017. On September 8, 2017, Petitioner was found guilty of all charges. Petitioner was sentenced to a minimum of eleven (11) years to a maximum of twenty-two (22) years. Thereafter, Petitioner filed post-sentence motions and requested that he represent himself moving forward. On October 11, 2017, Attorney Monahan filed a motion to withdraw. After a Granger hearing, in which Petitioner insisted that he be allowed to represent himself, we allowed Mr. Monahan to withdraw and Petitioner was then allowed to represent himself.

On February 15, 2018, Petitioner filed a Notice of Appeal to the Superior Court. On January 23, 2019, Petitioner's appeal was denied and his conviction was affirmed by the Superior Court. See 2019 WL 290685. Subsequently, Petitioner filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court which was denied on January 7, 2020; his Petition for Allocatur to the United States Supreme Court was denied on March 9, 2020.

On February 5, 2020, Petitioner filed a "Motion to Address Illegal Sentence" which we recognized as a petition for relief under the Post-

5

Conviction Relief Act. Therefore, we appointed PCRA counsel and set an issue framing conference.

Then on March 16, 2020, Petitioner timely filed a second Post-Conviction Relief Act Petition, this time using the form generally used by incarcerated individuals, commonly identified as form DC-198.

Thereafter, Petitioner filed numerous supplemental motions, documents containing legal argument, and letters to the court seeking various forms of PCRA relief and relief from a collateral forfeiture action brought by the Commonwealth.[1] Most of Petitioner's supplemental filings raised repetitive claims for relief. Petitioner's many filings are far too numerous to cite individually.

As a generally summary, in his various filings Petitioner raised ineffective assistant of counsel claims against each of his appointed attorneys, in additional he raised claims of various constitutional violations committed by the Commonwealth including attacking his warrantless arrest, the issuance of the search warrant, and the quality of the evidence introduced against him at trial.

Petitioner also insisted on exercising his right to self-representation. Therefore, we held a Grazier proceeding/hearing on June 22, 2020. Against our advice, Petitioner remained insistent in discharging his court appointed counsel. We granted Petitioner his relief by allowing him to proceed by self-

---

[1] The forfeiture matter was a civil action, litigated under a civil docket number.

6

representation. At that time, we also informed Petitioner that we would direct the Commonwealth to present the three attorneys accused of ineffectiveness so that Petitioner could examine them on the record with regard to his claims. However, we also warned Petitioner that it would be his obligation to present the testimony and evidence necessary to support his PCRA claims.

Petitioner's PCRA hearing was held in person on October 9, 2020. At the hearing, in addition to the Petitioner, all three of Petitioner's past attorneys appeared and testified.

Petitioner filed his brief on November 12, 2020. Petitioner's brief is a 51 page document with his Criminal Complaint and its affidavit of probable cause attached as an exhibit. Petitioner's brief raises eight alleged "Questions for Review". However, his eight questions or claims overlap each other and/or conflate legal concepts. As best we can summarize and distill Petitioner's PCRA claims, Petitioner asserts that: 1) Attorneys Driscole, Karam, and Monahan were ineffective during the pre-trial process because they failed to: perform legal research, present legal arguments, raise meritorious claims, and investigate the facts in relation to Petitioner's warrantless arrest; 2) Petitioner asserts that his three attorneys were ineffective for not challenging his warrantless arrest, for not challenging the quality of the probable cause asserted to support the warrantless arrest, for not arguing that the probable cause was stale, and for not pursuing a

"Franks" hearing. This claim regarding a warrantless arrest is frequently cited and echoes as a theme throughout Petitioner's PCRA Pleadings and Brief. Petitioner is adamant that his arrest was illegal because no arrest warrant was obtained prior to his detention. 3) Petitioner complains that trial counsel, Attorney Monahan, was ineffective for: a) failing to raise *Brady* violations; b) failing to challenge evidence introduced at trial, and c) failing to object to object to the admission of prejudicial police testimony during his trial; 4) Attorney Monahan was ineffective for failing to object to the alleged illegal sentence imposed upon Petitioner on the ground that the two sentences should have merged; and 5) Attorney Monahan was ineffective for failing to object to the calculation of Petitioner's prior record score.

The Commonwealth filed its responsive brief on January 11, 2021

On January 26, 2021, Petitioner filed a Motion seeking to strike the Commonwealth's brief as untimely. Frankly, the Commonwealth's brief can be characterized as superficial, failing to adequately analyze any of Petitioner's issues. It was unhelpful to this Court.

Most recently, on February 8, 2021, Petitioner filed a request to supplement the PCRA record with the notes of testimony from the hearings/court appearances in which Petitioner requested the removal of attorneys Driscole, Karam, and Monahan.

We shall address Petitioner's arguments in turn.

8

# PCRA Standard of Review

The eligibility prerequisites to succeed on a PCRA petition are delineated in 42 Pa.C.S.A. § 9543 which reads as follows:

(a) **General rule.**--To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

. . .

(1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:
(i) currently serving a sentence of imprisonment, probation or parole for the crime;
(ii) awaiting execution of a sentence of death for the crime;
(iii) serving a sentence which must expire before the person may commence serving the disputed sentence; or
(iv) has completed a sentence of imprisonment, probation or parole for the crime and is seeking relief based upon DNA evidence obtained under section 9543.1(d) (relating to postconviction DNA testing).

. . .

(2) That the conviction or sentence resulted from one or more of the following:
(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.
(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
(v) Deleted.

9

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.
(vii) The imposition of a sentence greater than the lawful maximum.
(viii) A proceeding in a tribunal without jurisdiction.

. . .

(3) That the allegation of error has not been previously litigated or waived.
<Subsec. (a)(4) is permanently suspended insofar as it references "unitary review" by Pennsylvania Supreme Court Order of Aug. 11, 1997, imd. effective.>

. . .

(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.

See 42 Pa.C.S.A. § 9543.

The findings and conclusions of a PCRA court must be supported by the record and free from legal error. *Commonwealth v. Sneed,* 587 Pa. 318, 899 A.2d 1067, 1071 n. 6 (2006). "The findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given great deference." See *Commonwealth v. (Damon) Jones,* 590 Pa. 202, 912 A.2d 268, 293 (2006). See also *Commonwealth v. White,* 557 Pa. 408, 734 A.2d 374, 381 (1999) (appellate court is bound by credibility determinations of PCRA court where determinations are supported by record); *Commonwealth v. Santiago,* 579 Pa. 46, 855 A.2d 682, 694 (2004) ("[W]e are bound by the PCRA court's credibility determinations where there is record support for those determinations.").

10

Although the PCRA court's factual determinations are entitled to significant deference, its legal determinations must be consistent with Constitutional protections, the provisions of Pennsylvania's Post Conviction Relief Act, and Pennsylvania's case law. See *Commonwealth v. Hawkins*, 586 Pa. 366, 894 A.2d 716, 722 (2006);

When reviewing an order dismissing a PCRA petition, the Superior Court must determine whether the ruling of the PCRA court is supported by record evidence and is free of legal error. *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa. Super. 2010). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." *Commonwealth v. Carter*, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted).

"It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness." *Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018) (citation omitted). To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. *Commonwealth v. Cooper*, 941 A.2d 655, 664 (Pa. 2007) (citing

11

*Commonwealth v. Carpenter,* 725 A.2d 154, 161 (1999)). For the petitioner to have been prejudiced he must demonstrate that counsel's actions or inactions made the result of the trial inherently unreliable. *Commonwealth v. Weinder,* 577 A.2d 1364 (Pa. Super. 1990). A PCRA petitioner must address each of these prongs on appeal and a failure to satisfy any prong of this test is fatal to the ineffectiveness claim. *See Cooper,* 941 A.2d at 664; *see also Commonwealth v. Wholaver,* 177 A.3d 136, 144 (Pa. 2018).

## DISCUSSION

I. <u>Ineffectiveness of Counsel for failure to investigate and perform legal research</u>

Most PCRA allegations of Constitutional violations of a defendant's rights are decided in context of a claim of ineffective assistance of counsel. See Commonwealth v. Kilgore, 719 A.2d 754 (Pa Super 1998). Petitioner has raised a general claim of ineffective assistance of counsel with regard to the failure to investigate or do legal research; however, Petitioner has not made a record of the specific actions or inactions of counsel related to an investigation or legal research and how such actions or inactions were somehow constitutionally defective. As a result, these undefined claims are not constitutionally cognizable claims as required under the PCRA, Section 9543(a)(2)(ii) or the holding in *Strickland v. Washington,* 466 U.S. 668 (1984).

12

Further, the PCRA places the burden of pleading and proving ineffective assistance of counsel on Petitioner. See *Commonwealth v. Speight*, 677 A2d. 317 (Pa. 1996). Here, Petitioner presented no witnesses, no testimony, and no theory to support claims of failure to research or failure to investigate. We further note that all three of the attorneys alleged to be ineffective testified at the PCRA hearing and the issue of failure to investigate and/or failure to do research was not developed by Petitioner. Thus, we believe that these claims are also waived. See *Commonwealth v. Bracey*, 795 A2d. 935, 940. (Footnote 4, Pa. 2001) (an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, does not satisfy petitioner's burden of establish of establishing that he is entitled to relief).

II.  Ineffective assistance of counsel claim relating to Petitioner's warrantless arrest and the alleged lack of probable cause.

The heart of Petitioner's claim is the assertion that Officer Faasuamalie lacked authority to execute a warrantless arrest because: (1) there was no probable cause to believe that a crime was being or about to be committed; (2) he lacked specific facts regarding the alleged criminal activity; (3) the arrest did not stem from an immediate pursuit or a "hot pursuit" derived from an alleged criminal activity; (4) he waited 68 days from the date of the last controlled buy to effectuate the arrest; and (5) there was no neutral and

13

detached magistrate to make a probable cause determination prior to Petitioner's arrest. *See* Petitioner's Brief at 13-14.

Petitioner also complains that law enforcement officers "placed the cart before the horse" because they executed an arrest without first obtaining a valid arrest warrant – an overreach which violated his rights under the U.S. Constitution and the Pennsylvania Constitution. *See id.* In his brief, Petitioner describes the law enforcement's conduct as an "illusion" that "looks good on paper only." *See id.* at 2. We are unsure what Petitioner means when he refers to "put the cart before the horse" or an "illusion." As such, much of Petitioner's argument is hyperbole and hard to follow. However, we surmise that Petitioner is referring to the weight or sufficiency of the probable cause relied upon by law enforcement to justify his arrest.

As best we can discern, Petitioner's claim stems from the failure of all three of his attorneys to present arguments and defenses pertaining to what Petitioner believes to be a dispositive legal argument, *i.e.,* "that probable cause did not exist for Petitioner's warrantless arrest, and [sic] therefore, any search incident to that arrest was improper and the evidence illegally obtained." *See* Petitioner's Brief at 1.

We first address Petitioner's allegation that the three (3) controlled buys that took place on August 3, 2016, August 17, 2016, and on August 31, 2016 did not establish probable cause for the warrantless arrest that occurred on November 4, 2016. As a general rule, there is no constitutional

14

prohibition against an arrest without a warrant if the arrest is supported by probable cause and is permitted under common law, statute, or rule. Under the Pennsylvania Constitution and Pennsylvania case law, to be constitutionally valid an arrest without a warrant must be based upon probable cause. See Pa. Const. Art. I, § 8 , See also *Commonwealth v. Clark,* 558 Pa. 157, 735 A.2d 1248, 1251 (1999) (Warrantless arrest is valid if law enforcement has probable cause to believe: 1) a felony has been committed; and 2) the person to be arrested is the felon. Citing *Commonwealth v. Travaglia,* 502 Pa. 474, 484, 467 A.2d 288, 292 (1983).) Further, probable cause has been defined as, "those facts and circumstances available at the time of the arrest which would justify a reasonable prudent man in the belief that a crime has been committed and that the individual arrested was the probable perpetrator." *Commonwealth v. Harper,* 485 Pa. 572, 583, 403 A.2d 536, 542 (1979). The courts analysis for determining if probable cause to arrest exists requires the application of "the totality of the circumstances test" enunciated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Specifically, the totality of circumstances test used in *Gates* applies to warrantless arrests. See *Commonwealth v. Clark,* at p. 1252. Finally, the analysis of probable cause for arrest without a warrant is a similar analysis to that required by a magistrate when considering whether a search warrant should be issued. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

15

In his brief, Petitioner cites *U.S. v. Khounsavanh,* 113 F.3d 279, 285 (1st Cir. 1997)[2] for the proposition that a controlled buy, even if observed by an officer, is *per se* insufficient to establish probable cause. *See id.* Apparently, the Petitioner is enamored with the following statement by the *Khounsavanh* Court:

> The government argues that a controlled buy, observed by the officer, is *per se* sufficient to establish probable cause to search the apartment. We disagree. A *per se* rule is not appropriate in the context of protecting precious Fourth Amendment freedoms.

*Id.* at 285.

Petitioner advances the proposition that *Khounsavanh* held that the single controlled buy did not support probable cause for a warrantless arrest. In fact, Petitioner's interpretation of *Khounsavanh* is incorrect, misplaced, and not on point. The facts in *Khounsavanh* involved an arrest in the State of Rhode Island, where the defendant attacked the probable cause offered to support both the search warrant for his apartment and the search of his person. It is also apparent that similar to Petitioner, defendant

---

[2] The facts in Khounsavanh were that Rhode Island police officers received information from a confidential informant that two individuals know by street names "Fat Boy" and "Turtle" were storing and selling crack cocaine in the first floor rear apartment at 676–678 Chalkstone Avenue. After receiving that information, the police decided to conduct a controlled buy of cocaine from the apartment under the officer's supervision through the Confidential Informant which resulted in the purchase of cocaine from the targeted individuals in the apartment building. [The procedure for conducting the controlled buy was nearly identical to the procedure used by the task force in this case.] The application for the search warrant was supported by the single controlled buy. Apparently, the warrant authorized the search of both the apartment and the persons of Fat Boy and Turtle. A large quantity of crack cocaine was found in the apartment. In the separate search of "Fat Boy" [who we assume to be Khounsavanh], the police found 14 packaged bags of crack cocaine in his front pants pocket.

16

Khounsavanh was detained at the scene without an arrest warrant; however, the *Khounsavanh* Court did not specifically address the validity of the arrest. We suggest that Mr. Khounsavanh's warrantless arrest was not contested on appeal because it was clearly proper.

Ultimately, the sole event supporting probable cause for the issueance of a search warrant in *Khounsavanh* was the single controlled buy. Defendant Khounsavanh attacked the probable cause affidavit advanced by law enforcement to justify their search warrant and the search of Mr. Khounsavanh.

Clearly, the *Khounsavanh* Court rejected the "*per se*" claim by the prosecutors - a controlled buy, in of itself, was sufficient to establish probable cause to for a search. Instead, the *Khounsavanh* Court held that "a probable cause determination is fundamentally a fact-specific inquiry..."; that the inquiry is to be based upon the "totality of the circumstances"; before finally concluding, "taking into account the totality of circumstances in the instant case, the government had established probable cause for the search of the first floor rear apartment at 676–678 Chalkstone Avenue." *Id. at 285.* In making its conclusion, *the Khounsavanh* Court reviewed the detailed information recited by law enforcement including the intelligence gathered to support law enforcement's decision to conduct the controlled buy which included the back ground information provided by the confidential informant; it reviewed the procedure for the controlled buy; and it

17

considered the reasonableness of the conclusions reached by law enforcement, all of which established the probable cause required to approve the search warrant. *Id.* at 285-6. Thus, based upon its analysis, the *Khounsavanh* Court found that the totality of the circumstances with regard to the single controlled buy constituted sufficient probable cause to support the search of both the apartment and of Mr. Khounsavanh.

Although the arguments raised by Mr. Khounsavanh and this Petitioner are somewhat similar, the ruling by the First Circuit rejected Mr. Khounsavanh's argument regarding lack of probable cause and instead ratified the action taken by law enforcement. In other words, *Khounsavanh* held that the totality of the circumstances related to **one** controlled buy provided sufficient probable cause to justify law enforcement's actions. Therefore, rather than being helpful to Petitioner, the ruling in *Khounsavanh,* repudiates Petitioner's argument.

Next, Petitioner attempts to attack the facts supporting probable cause for his arrest by criticizing statements by law enforcement that during the controlled buys the confidential informant was under constant surveillance inside and outside the stores. Petitioner claims that there was no video or cell-phone evidence offered to corroborate the hand-to-hand drug sales. *See* Petitioner's Brief at 3.

It is also significant that the single controlled buy in *Khounsavanh* was similar to Petitioner's three controlled buys, with the exchange occurring

18

outside the vision of the surveilling officers. A secretive hand-to-hand exchange is a typical phenomenon of controlled buys – drug dealers often require the exchange of drugs for money to be made outside public view, and, therefore also outside of the view of the surveilling officers. Thus, we find the lack of video recording of the hand-to-hand transactions due to the location of the transactions to be only one of the many considerations which comprise the "totality of the circumstances." We further find the procedure used by the task force to assure the reliability of, and to corroborate, the confidential informant's report of the drug transaction – such as the pre-delivery and post-delivery search of the Confidential Informant for money and contraband; the recording of the currency used to buy the drugs; and the surveillance of the Confidential Informant to and from the site of the transaction - more supportive and persuasive than Petitioner's complaint that law enforcement was unable to provide video of his alleged criminal activity. Here, the old prosecutorial adage applies to these facts - "It is rare for criminals to commit their crimes in front of a busload of nuns." Thus, based on our experience analyzing other controlled buys, there was nothing in this fact pattern which gives us any pause with regard to the quality of the probable cause.

The Pennsylvania Supreme Court discussed the legal standard for determining probable cause in *Commonwealth v. Thompson*, 985 A.2d 928 (Pa. 2009):

> Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988, 990 (1991). The question we ask is not whether the officer's belief was "correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Rather, we require *only a "probability,* and not a prima facie showing, of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (citation omitted) (emphasis supplied). In determining whether probable cause exists, we apply a totality of the circumstances test. *Commonwealth v. Clark*, 558 Pa. 157, 735 A.2d 1248, 1252 (1999) (relying on *Gates, supra* ).

Id. at p. 931

We are also aware that the same probable cause (the three controlled buys occurring on August 3, 17, and 31, 2016) was advanced to support the criminal complaint for those charges, the issuance of the search warrant, the binding over the criminal charges at the preliminary hearing, and the Commonwealth's presentation in opposition to Petitioner's suppression motion. At each event, the reviewing judge ruled that the probable cause set forth by the Commonwealth was sufficient to support law enforcement's actions. Further, at Petitioner's trial, the Commonwealth submitted the three controlled buys to the jury and the Petitioner was able to cross

20

examine each witness (including the confidential informant). In addition, the Petitioner also testified as to his version of what happened and his theory of defense. After review of all the facts surrounding the three controlled buys, including the additional information provided by Petitioner's own version, the jury found that the Commonwealth was able to prove the Petitioner's guilt with proof beyond a reasonable doubt, a far greater burden than establishing mere probable cause. Any reasonable review of this record would support the existence of probable cause. Thus, we submit that the Petitioner's claim that the Commonwealth's evidence related to the three controlled buys cannot establish probable cause to justify his warrantless arrest, or the issuance of the search warrant for his home, is not worthy of further discussion.

Next, we address the alternative claim that Petitioner's warrantless arrest was somehow invalid because of stale probable cause.

Recently, in *United States v. Haldorson*, 941 F.3d 284 (7th Cir 2019), the Seventh Circuit Court discussed the concept of staleness of probable cause supporting a warrantless arrest due to the gap between the date of a controlled buy and the arrest date. The gap between the controlled buy and the warrantless arrest in *Haldorson* was approximately three weeks. The *Haldorson* Court rejected the concept of staleness:

> The mere passage of time does not necessarily dissipate the probable cause for an arrest. It is well-established that "there is no requirement that an offender be arrested the moment probable cause is established." *United States v. Reis*, 906 F.2d

21

284, 289 (7th Cir. 1990) (citing *Hoffa v. United States*, 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966))."

*Id.* at 291.

The *Haldorson* Court also noted: " 'We have previously held that the defendant's participation in a controlled drug provided the police with probable cause to arrest which was not rendered stale by the passage of one month.' *United States v. Mitchell*, 523 F. App'x 411, 414 (7th Cir. 2013)." *Id.* at 291. *Haldorson* also cited other Circuit Courts which have reached similar conclusions, based on similar facts. See *United States v. Hinson*, 585 F.3d 1328 (10th Cir. 2009) (controlled buy occurring over a month prior to warrantless arrest). The *Haldorson* Court then discussed the irrefutable logic behind their holding noting, "When there is a reasonable belief that someone has committed a crime, time by itself does not make the existence of that fact any less probable." Id. at 292.

It is also well settled that under Pennsylvania case law, probable cause for a warrantless arrest must be determined on the basis of the knowledge of the arresting officer at the time of arrest. See, *Commonwealth v. Mackie*, 320 A.2d 842, 844 (Pa. 1974); *Commonwealth v. Riley*, 4 25 A.2d 813, 816 (Pa. Super 1981). The Supreme Court of Pennsylvania has defined probable cause "as facts and circumstances within the knowledge of the authorities of which they have reasonable trustworthy information, which would warrant a man of reasonable caution to believe that the suspect had

22

committed a crime." *See Commonwealth v. Kenney*, 297 A.2d 794, 796 (Pa. 1972).

Frankly, the concept of the statute of limitations addresses the issue of staleness, as the legislature determines at what point the passage of time renders a criminal prosecution stale. The purpose of the "statute of limitations is to limit exposure to criminal prosecution to a certain fixed period." *Commonwealth v. Cardonick et al.*, 448 Pa. 322, 292 A.2d 402, 408 (1972) (citing *Toussie v. United States*, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)).

Here, based upon this record, the Petitioner was the target of an intense task force operation which was continuous and vibrant through the several months it was operational, ending with the Petitioner's arrest. Under these facts, it is clear that neither the investigation of Petitioner nor the evidence establishing probable cause became "stale". Thus, Petitioner's argument that probable cause to arrest in this case passed its expiration date because he was arrested 68 days after the last controlled buy is without any legal support.

Finally, in fairness to the Petitioner, we feel compelled to acknowledge that Pennsylvania case law does discuss the concept that probable cause can become "stale" as it relates to the issuance of a search warrant. This is because the Commonwealth must present additional probable cause to support issuing a search warrant based upon the probability that contraband

23

or evidence of a crime will be found in a particular place at the time the warrant is to be executed.  See *Commonwealth v. Manuel*, 194 A.3d 1076, 1081 (Pa. Super 2018), *Commonwealth v. Rapak*, 138 A.3d 666, 670-71 (Pa. Super. 2016), *Commonwealth v. Ryerson*, 817 A.2d 510, 513–14 (Pa. Super. 2003).

Petitioner's bald claim of staleness of the probable cause for the search warrant is, due to the passage of time, the Commonwealth could not have held a reasonable belief that contraband would be located at the locations cited in the search warrant.  However, we find based on the totality of the information set forth in the affidavit of probable cause supporting Petitioner's search warrant, the probable cause supporting the search warrant was not stale.  The affidavit, based upon months of surveillance, established probable cause that the Petitioner based and operated his drug dealing business from his home.  There is no evidence (or argument) advanced to support a claim that between the last controlled buy and November 4, 2016, the Petitioner abandoned his drug business or the Commonwealth should have reasonably concluded that Petitioner would have abandoned his drug business.

We can find no factual support or case law which establishes or supports an argument that the search warrant in this matter was constitutionally invalid due to the staleness of probable cause.  As such, Petitioner's claim that counsel was ineffective for not advancing the

24

"staleness" argument, against either the warrantless arrest or the subsequent search warrant, is without merit.

We next move to the related ineffective assistance of counsel claim for the failure of counsel to pursue a "Franks" hearing, under *Franks v. Delaware,* 438 U.S. 154, 156 (1978). We summarize the holding in *Franks* as follows: The Supreme Court held that in certain defined circumstances a defendant can attack the factual allegations contained in a probable cause affidavit submitted in support of a search warrant. However, the *Franks* Court recognized that there is a "presumption of validity with respect to the affidavit supporting the search warrant," 438 U.S. at 171, 98 S.Ct. at 2684. Thus, the *Franks* Court intended that its holding was "limited [in] scope". *Id.* at 167, 98 S.Ct. at 2682.

At the PCRA hearing, Mr. Monahan testified that based on his analysis a *Franks* hearing was not warranted.

Under *Franks,* in order to attack accuracy of the factual content of a search warrant, the defendant must make - raise in a pleading - a dual showing. The first prong is "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Id.* at 155-56, 98 S.Ct. at 2676-77. This showing "must be more than conclusory" and must be accompanied by a detailed offer of proof. *Id.* at 171, 98 S.Ct. at 2684. Secondly, a defendant must show that the false information is essential or

25

material to the probable cause determination. After a *Franks* claim is properly raised by a defendant, then the court is required to make its own analysis on the issue of materiality, before conducting a hearing. If the court finds that if the alleged defective factual predicate is removed from the analysis (set aside) and "there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171-72, 98 S.Ct. at 2684-85.

Our Federal Courts have extended *Franks* beyond cases where false information is included in a search warrant affidavit, so that *Franks* also applies to any law enforcement affiant who omits material facts "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." See *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir.1986) and *United States v. Colkley*, 899 F.2d 297, 300 (4th. Cir.1990).

Petitioner's *Franks* claim, as set forth in his PCRA, does not attack the search warrant, but rather the probable cause offered by Officer Faasumalie in support of the warrantless arrest of Petitioner for the felony drug deliveries. For our analysis, we reviewed the subsequent affidavit filed in support of the issuance of the criminal complaint. Petitioner's claim is a bald, unspecified accusation that the information provided by the Confidential Informant and task force members are lies, without any detail or factual support to attack the affidavit. The Petitioner proffers no

independent evidence of his bald assertions. Therefore, Petitioner has not made out either of the required prongs set forth in *Franks*.

Secondly, a warrantless arrest for a drug delivery is permissible under Pennsylvania law, so long as probable cause existed for the arresting officer to believe that the defendant committed the crime at issue. We further remind Petitioner, his claim that Officer Faasuamalie lacked sufficient probable cause to believe Petitioner committed the hand-to-hand drug deliveries is logically contradicted by the jury's verdict that Petitioner was guilty of the drug deliveries beyond a reasonable doubt.

As a result, the claim of ineffective assistance of counsel for the failure to pursue a *Franks* Hearing is dismissed, as Petitioner cannot meet his burden of proof to establish relief under either prong of *Franks*.

III.(a) <u>Ineffective assistance claim for failure to pursue a "Brady" violation</u>

Petitioner asserts that the Commonwealth violated his constitutional rights by wrongfully withholding exculpatory discovery materials as set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

We again note, the PCRA places the burden of pleading and proving ineffective assistance of counsel on Petitioner. See *Commonwealth v. Speight*, 677 A2d. 317 (Pa. 1996).

The Pennsylvania Supreme Court explained the burden a petitioner must meet to establish a claim of ineffective assistance of counsel related to

27

an alleged Brady violation in *Commonwealth v. Chimel*, 30 A.3d 1111, (Pa. 2011):

> To establish a *Brady* violation, an accused must prove three elements:
>
> > [1] the evidence [at issue] was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued.
> > *Paddy*, 15 A.3d at 450 (quoting *Commonwealth v. Lambert*, 584 Pa. 461, 884 A.2d 848, 854 (2005)).
> >
> > The burden rests with Appellant to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." *Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890, 898 (1999) (citations omitted). There is no *Brady* violation when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from non-governmental sources. *Paddy, supra* at 451.

*Id.* at 1130.

Here, the Petitioner makes another bald claim that Brady material exists and that counsel was ineffective for failing to investigate or raise a Brady claim. Specifically Petitioner's PCRA alleges that the Brady material consists of: (1) Petitioner's "surveillance DVR" that police confiscated from Petitioner's residence which would show that on November 4, 2016, Petitioner did not possess or throw a black jacket containing drugs; (2) the Commonwealth did not produce a video of his strip search at the police station on November 4, 2016, which video would show that Petitioner did not have drugs on his person; (3) A claim that there should have been surveillance video of the three controlled buys beyond the KMART videos

28

provided by the Commonwealth and Petitioner alleges that the additional video would contradict the Commonwealth's testimony as to the events occurring in the store;[3] and, (4) the Commonwealth did not produce cell phone evidence of the controlled buys and/or Petitioner's communication with the Confidential Informant.  See Petitioner's Brief filed November 12, 2020 at pp. 30-32, 38.

The first Brady item Petitioner cites is the alleged surveillance video from Petitioner's home surveillance system.  Petitioner asserts that his security video system would have captured the events occurring during his November 4, 2016 arrest, would prove that he did not possess and throw a black jacket onto his porch, and further prove that there was no black jacket present at the time of his arrest.  Petitioner also argues that the Commonwealth engaged in misconduct by denying him access to the video through discovery and/or destroying the video.  No other evidence was presented in support of this Brady claim.

At trial, Officer Faasuamalie testified that law enforcement noted the security camera system set up outside the Petitioner's home and seized DVR

---

[3] We note that the Commonwealth did play video taken of Petitioner and the Confidential Informant while they were in KMART on August 3, and August 31, 2016.  The videos were played by the Commonwealth after it was referenced by the Petitioner during his direct testimony and after Petitioner indicated his desire to have the video shown to the jury. Apparently, Defense Counsel had technical difficulties displaying the video, so the Commonwealth used its hardware to display the videos to the jury at the completion of Petitioner's testimony.  The Videos showed Petitioner and Confidential Informant walking into and around KMART on both days.  At various points the two could be seen together. The Commonwealth acknowledged that the videos did not capture or depict the alleged hand-to-hand drug transactions.

recorder during the execution of the search warrant for Petitioner's home. Officer Faasuamalie testified that he had hoped to find security footage; however, the task force was unable to locate any recordings on the recorder. See N.T. 9/7/2017 at pp. 299 - 300. We note that the Commonwealth has consistently asserted that no such video was found – both during discovery and at trial.

We can easily debunk Petitioner's theory of misconducted by his own testimony. During his direct examination, the Petitioner testified:

A. First, I'm seeing the jacket, was here today, I never even seen pictures of the jacket.

Q. That's not your jacket?

A. That's not my jacket. I mean, like you said, DEA, the Palmer Unit, Wilson Borough, and the guy that came up, the gentlemen that's in the back who sat here at the hearing as the last witness for the prosecution, I thought it was great. I even he said was awesome, because they would have to do the investigation for me, but they're hiding the investigation for everybody else. Why not do the DNA? I'm telling you, it's not my jacket. Why not do it? You said that you go through phones and wiretaps and voice recorders and surveillance with cameras, we're talking about its 2016, I got cameras on my apartment.

Q. You have cameras, correct?

A. I had them. They took them. I didn't understand how he took my cameras—

Q. What kind of cameras?

A. Belkin Security Cameras.

Q. Did they like having a rolling 30 days surveillance, or what type of surveillance, do you remember?

A.        I didn't hook it up, but a friend of mine hooked all the cameras up. I didn't understand how to hook it up, so I'm not sure why that Wednesday, whey not Thursday than Wednesday, because if they did, I didn't have any access to it. I had just got the cameras, so I really didn't even know how to work it yet.

Q.        Were the cameras functional?

A.        Yes, they were on, I needed it for crimes and stuff like that ...

N.T. 9/7/17, pp. 241-242.

Clearly, even though the Petitioner had previously claimed "expertise" in the field of automobile electronics, especially custom stereo installations, Petitioner testified that an unidentified third party (a friend) installed his Belkin security camera prior to his arrest, that he did not understand how his friend hooked up the camera, he also acknowledged that he "did not have access to it", and that he "didn't even know how to work it yet."

Thus, the testimony of Officer Faasuamalie that he seized the DVR, then looked for security camera recordings but found none, and the Petitioner's corroborating trial testimony that his surveillance camera system was new, installed by third parties, that Petitioner didn't know how it functioned, and that Petitioner did not know how to work it, establishes by the preponderance of the evidence, that the system was not operational on November 4, 2016.

Regarding the second Brady item, Petitioner testified that he observed video cameras in the Palmer Township Police Station and that those cameras should have recorded his strip search. Petitioner insisted that there should

31

have been a video available of his strip search which would contradict the testimony of the police, that such a video would establish that there was no contraband secreted on his person, and the Commonwealth is guilty of misconduct for not producing the same.

At trial, Officer Brendt Lehr and Officer Faasuamalie testified that after Petitioner was detained, he was brought to the Palmer Township Police Department and searched in a processing room. During the search, in Petitioner's groin area, Officer Faasuamalie Offficer located vials of cocaine. N.T. 9/6/2017 at pp. 69-70, 76; 201- 202, N.T. 9/7/2017 at pp.13-14. Officer Faasuamalie was specifically asked if he had a video recording of the strip search. Officer Faasuamalie testified that he didn't know if there was any video recording of his interaction with Petitioner. Further, Officer Faasuamalie explained that he did not pursue a recording because Petitioner did not agree to an interview. *Id.*

We look to the non-precedential decision in *Commonwealth v. Underwood*, 240 A.3d 170 (table) (Pa. Super 2020), [non-presidential decision set forth in 2020 WL 4746006], for its persuasive value, as the issue in Underwood is similar to this claim.[4] In *Underwood*, the defendant was stripped searched while incarcerated at State Correctional Institution Fayette and found to be in possession of drug contraband. He was

---

[4] Pennsylvania Superior Court I.O.P. 65.37 (210 Pa. Code § 65.37); and Pa.R.A.P. 126(b)(2) allow citation to unpublished opinions for their persuasive value. .

32

subsequently convicted and later appealed his conviction to the Superior Court. The *Underwood* appeal raised one question for review - the evidence was not legally or factually sufficient to support his conviction because the SCI failed to preserve video evidence of his strip search. The *Underwood* Court likened defendant's claim to one of spoliation or "nonpreservation" of evidence. *Underwood* further noted that the elements required to support a spoliation claim are found in *Marshall v. Brown's IA, LLC*, 213 A.3d 263, 267-68 (Pa. Super. 2019), *appeal denied*, 226 A.3d 568 (Pa. 2020). Under *Marshall*, if a court finds that spoliation of evidence has occurred, three factors must be considered in assessing the proper penalty for spoliation:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.

*Id.* at 268.

In its analysis, the *Underwood* Court first noted that, similar to Petitioner's case, the evidence cited by Mr. Underwood was "not clear that a video of the incident existed in the first place" as the record contained conflicting evidence: While Mr. Underwood asserted that a prison official asserted that there are cameras "all over the prison", the record did not establish that there were cameras located in the strip search area. The *Underwood* Court also noted that there was some dispute as to whose responsibility it would have been to seek to preserve relevant video, if it did

33

exist, as the system automatically over writes and erases the recordings every 15 to 20 days; thus, the *Underwood* court held that without evidence establishing the existence of video evidence and/or establishing fault for its unavailability, a claim for spoliation cannot be made out by Mr. Underwood.

The *Underwood* Court also noted that regardless "there is nothing in the Contraband statute that requires the Commonwealth to provide video evidence or mandates that a certain number of witnesses must testify to witnessing the violation."

Finally, the *Underwood* Court found that defendant's argument that the lack of a video should result in the vacation of his conviction goes to the weight of the evidence rather than to the sufficiency of the evidence. See *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. 2014) (contradictions and inconsistencies in testimony go to weight, not sufficiency).

Ultimately, *Underwood* held that the record established that law enforcement "was consistent about the salient details of the incident." Thus, Mr. Underwood's conviction was affirmed, because he could not establish the existence of the video in question.

Here, we reach a similar finding as the Court in *Underwood*. First, the Commonwealth is not required to produce video evidence of hand-to-hand transactions of the strip search to convict Petitioner. Secondly, we would expect that the Commonwealth would not, as a general concern about privacy, video tape strip searches of suspects. Third, Officer Faasuamalie

34

testified that he was not aware of such a video, that he did not ask for or seek to capture video of Petitioner's presence at the police station, as Petitioner refused to be interviewed about his criminal charges.

Finally, purposes of argument, even if we accept Petitioner's bald supposition that there was an operating video camera system that would have captured his strip search and it was not available for discovery purposes, there is no testimony as to the procedural set up of the Palmer Township video surveillance with regard to availability or preservation of videos; and more importantly, there is no record that notice was given to Officer Faasuamilie and/or requests made of the Palmer Township Police to preserve the video. Thus, there is no record which would allow us to conduct analysis of the degree of fault for not preserving the same.

We find Officer Faasuamalie's testimony to be credible.

Therefore, Petitioner has not carried his burden of proof regarding this second Brady violation, as there is no record that a video ever existed of the Petitioner's strip search and there is no record supporting misconduct.

The third claim for a Brady violation is that the Commonwealth did not provide all KMART videos available.

At trial, the Confidential Informant testified that on August 3, 2016, he met the Defendant in the Kmart, they then exited Kmart, and conducted a hand to hand transaction outside public view in a motor vehicle. The Confidential Informant testified that the second transaction, occurring August

16 2016, did not occur at a Kmart, but rather he met the Petitioner at a strip mall (Palmer Town Center). The confidential informant testified that the hand to hand transaction again occurred within his motor vehicle after the Defendant got into the Confidential Informant's vehicle and drove away from the mall with him. Regarding the third transaction occurring August 31, 2016, the Confidential Informant testified that he again met the Petitioner in Kmart, they went into the men's room to conduct a hand to hand transaction, and after completing the transaction they left men's room and then left KMART.

The record supports that the Commonwealth provided all store surveillance video obtained from KMART's security team for the August 3 and 31, 2016 controlled buys. Officer Brendt Lehr testified at trial as to how they obtained the same from the store officials. N.T. 9/6/2017 at p. 48. The KMART videos were played to the jury. N.T. 9/7/2017 at pp. 301 – 306. Both videos confirmed that Petitioner and the Confidential Informant were in KMART on August 3 and 31st. The video from the August 31st depicted the Petitioner and the confidential informant going into the Men's Room, but did not capture the events in the Men's Room. The Commonwealth did not have any corroborating video evidence with regard to the second - August 16, 2016 controlled buy emanating from the strip mall.

Petitioner is correct when he argues that there is no video evidence which captured any of the hand-to-hand transactions, as the transactions were not consummated in public, as they were alleged to have been secretly

36

transacted – two inside automobiles and one inside the KMART men's room. Interestingly, the Petitioner's testimony regarding all three meetings with the Confidential Informant corroborates the Commonwealth's evidence and testimony, with one major exception - Petitioner agrees that he met with the Confidential Informant on each occasion at the locations claimed by the Commonwealth; however, Petitioner denied exchanging drugs for money. Instead Petitioner claims that on each occasion, he and the Confidential Informant only discussed problems that the Confidential Informant was having with the performance of his truck. See N.T. 9/7/2017 pp. 249 – 255.

Based on this record, there is no evidence of missing or exculpatory videos regarding the three August 2016 transactions. The failure of the Commonwealth to capture the private hand-to-hand transactions is not exculpatory nor is the lack of existence of additional KMART videos a Brady violation, because even if there were additional KMART videos available, no KMART camera could have captured either KMART drug transaction as one occurred in the restroom and the other outside the store in an automobile. The other transaction occurred in the Confidential Informant's truck as they drove away from the strip mall.

The fourth missing evidence claim was not included in the "Brady" section of Petitioner's brief, but rather appears in his last section alleging the omission of material facts from the affidavit of probable cause support the criminal complaint. In that section, Petitioner complains that the

37

Commonwealth failed to produce cell phone evidence allegedly received from its search warrant.

Officer Fassuamalie testified that he seized Petitioner's cell phones and obtained a warrant to access their content. However, Officer Faasuamalie was only able to get calls starting in October 2016, therefore, he was unable get any information from petitioner's cell phone confirming the August communications with the Confidential Informant regarding the controlled buys. N.T. 9/7/2017 pp. 37 - 41. Officer Faasuamalie offered also his theory that the cell phones were newly purchased so that the August communications were not captured in the phone records. *Id.*

Again, Petitioner claims a Brady violation because the Commonwealth did not produce confirmation of his cell phone activity with the Confidential Informant.

Frankly, this claim of a Brady violation lacks any reasonable basis. The Confidential Informant, Officer Fassuamalie, and Officer Lehr testified that each controlled buy was set up by the Confidential Information placing a cell phone call to Petitioner in which the Confidential Informant set up the 3 buys for 2 grams of cocaine at $200 for each transaction. Thereafter, the Petitioner confirmed, both on direct and cross examination, on each occasion the Confidential Informant called him by cell phone to set up their meetings shortly before he met the Confidential Informant on August 3rd, 17th, and 31st.

See Notes of Testimony 9/7/2017 at pp. 249 - 255 & 271 - 274. Petitioner's very testimony admitted to the cell phone communication with the Confidential Informant. See See N.T. 9/7/2017 pp. 249 – 255.

Regardless of whether law enforcement "dumps" a cell phone or requests information from a cell phone provider, neither source captures the content of the cell phone conversations. The only evidentiary value of Petitioner's cell phone records would be to corroborate the cell phone contact. However, such corroboration was not necessary as the Petitioner admitted to have received all three cell phone calls from the confidential informant.

Again, there is nothing about this claim of missing cell phone records which could be exculpatory or suggests a Brady violation.

III.(b) Ineffective assistance failing to challenge evidence introduced at trial

This claim was not cogently set forth in his pleadings, his brief, or developed at the PCRA hearing. We have no idea what evidence is alleged to have been improperly admitted.

As a result, this undefined claim is not cognizable under the PCRA.

III.(c) Failing to object to prejudicial police testimony

In his brief, Petitioner argues for the first time that trial counsel was ineffective for his failure to object to Officer Faasuamalie's testimony about being familiar with Petitioner. However, this claim was never raised in the

PCRA Petition or at the PCRA Hearing. In his brief, Petitioner references the following trial testimony:

## Page 183

Q) Were you working with Palmer Township or with other law enforcement agencies?

A) If I can explain further?

Q) Sure.

A) In May or June of 2016, I obtained information from a source, a law enforcement source, confidential source, that Mr. Sinanan was distributing cocaine in the area. Mr. Sinanan was somebody that I was familiar with in prior investigations going back to 2007. So shortly after May or June of 2016, I initiated an investigation into Mr. Sinanan.

## Page 199

Q) Let me ask you: You knew him before that in the sense that have you two ever been face-to-face or was that just your research that you knew his street name?

A) I don't think he knew who I was, but I knew who he was.

Q) Okay.

A) From '07.

Petitioner's brief p. 37

The Official Transcript indicates that the Assistant District Attorney was examining Faasuamalie during the above exchanges and no objection was raised by defense counsel. N.T. 9/7/2017 at pp. 183 & 199.

Generally, evidence of prior criminal conduct of the Defendant is not admissible to prove a person's character in order to show that on a particular occasion, the person acted in accordance with that character. See Pennsylvania Rules of Evidence 404(b). However, Rule 404(b) is not an absolute rule, in that evidence of other crimes may be admissible for legitimate purposes, including but not limited to motive, intent, identity, and so long as the probative value of the evidence outweighs its unfair prejudice.

In his testimony, Officer Faasuamalie did not identify any prior convictions of Petitioner. The only arguable 404(b) violation was the single reference by Faasuamalie that in 2007 a confidential source informed Faasuamalie that Petitioner was involved in the distribution of cocaine. We do not quarrel with Petitioner's assertion that Faasuamalie's testimony [limited to only one sentence appearing on page 183] was vulnerable to objection under Rule 404(b). We also agree that no objection was raised by trial counsel.

We first note that missed evidentiary objections occur frequently in many trials, and rarely does one missed objection warrant PCRA relief. However, this missed objection may be more concerning than other, less prejudicial, evidentiary issues as Faasuamalie's testimony did reference

41

alleged past criminal behavior by Petitioner. If counsel would have raised an objection, likely we would not have found the brief reference to warrant a mistrial. More likely, the sanction we would have applied would be to strike the testimony as improper and provide a cautionary instruction to the jury that the information Faasuamalie received in 2007 appeared to be improper hearsay, not relevant, and inadmissible in this trial. Further, we would have cautioned the jury that Faasuamalie's statement is not evidence of the Petitioner's guilt to these charges. Finally, we would have instructed the jurors that they cannot infer guilt from that evidence or consider that evidence for any other purpose, including that the jury may not infer that Petitioner is a person of bad character or prone to commit the crimes he is currently on trial for having allegedly committed. Thereafter, Petitioner's trial would have continued.

Secondly, we cannot properly analyze this ineffective assistance claim because it was not properly raised in the PCRA Petitioner nor was it vetted at the PCRA hearing. Therefore, we find it was waived for failure to properly raise the claim. In *Commonwealth v. Lambert*, 797 A.2d 232, (Pa. Super 2001), the Superior Court addressed the issue of PCRA waiver, holding:

> [PCRA] claims were not raised in appellant's PCRA petition and, accordingly, are waived for that distinct reason. Pa.R.A.P. 302(a); *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 725 (2000); *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 704 (1998).

Id at 240-241.

However, in case we are wrong and there has been no waiver because this issue was argued in Petitioner's brief, our analysis of the alleged ineffective assistance must include consideration of the reasonableness of counsel's strategy, the possible alternatives, and perhaps most importantly the possible adverse effect on the outcome of trial and/or the resulting prejudice to Petitioner. See *Commonwealth v. Thomas,* 744 A.2d 713, 717 (2000); Commonwealth v. Howard, 719 A.2d 233, 237 (Pa. 1998); Commonwealth v. Marshall, 633 A.2d 1100, 1108 (Pa. 1993); Commonwealth v. Lasson, 659 A.2d 999, 1011 (Pa. Super 1995).

Here, Petitioner failed to develop any record with regard to the alleged ineffectiveness and prejudicial effect of Faasuamalie's statement. At the PCRA hearing, Petitioner did not question Attorney Monahan about his failure to raise an objection to Faasuamalie's reference about receiving information about Petitioner in 2007. Thus, we are unable to conduct the analysis of why no objection was raised, the reasonableness of counsel's strategy, the possible alternatives, and the possible adverse effect on the outcome of trial and/or the resulting prejudice to Petitioner. Since we are left to guess about these undeveloped issues, we are left to speculate about the following possibilities: (1) Mr. Monahan committed error in that he did not recognize the objection or he did not think the testimony implicated Rule 404(b); (2) It may be that Counsel did have a strategy - to ignore the reference, because it was attenuated and limited; as a result counsel may have believed that

43

the testimony did not resonate with the jury; and ultimately, the objection was not worthy of a mistrial; and/or (3) Counsel may have been concerned that if he did object and request to strike the testimony, it would have likely invited a cautionary instruction from the Judge, which would may have repeated or identified the harmful information. Thus, a cautionary instruction could have further suggested to the jury that Faasuamalie's testimony was both concerning and harmful to Petitioner.

As a general proposition, counsel is presumed to be effect and the Petitioner has the burden of establishing ineffective assistance of counsel. *Commonwealth v. Breakiron*, 729 A.2d 1088 (Pa. 1999). Petitioner must allege in detail the basis for claiming that counsels act or omission deprived Petitioner of his right to counsel. See *Commonwealth v. Bracey*, 795 A.2d 935, 940, n.4 (Pa. 2001) ("...an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy [Petitioner's] burden of establishing that he is entitled to any relief"). As a further general rule, counsel "...should not be held ineffective without first having an opportunity to address the accusation in some fashion.... The ultimate focus of an ineffectiveness inquiry is always upon counsel, and not upon an alleged deficiency in the abstract." *Commonwealth v.Colavita*, 993 A.2d 874, 895 (Pa. 2010).

44

This PCRA claim is of questionable merit as it was not developed in the record. Petitioner has not demonstrated that trial counsel lacked a reasonable strategy for opting not to draw attention to testimony by making an objection.

However, to be safe, we will analyze this claim as if Mr. Monahan had no justification for failing to object, even though Petitioner failed to establish such a contention. Thus, the final PCRA concept that must be discussed regarding Faasuamalie's testimony is the concept of harmless error. The seminal case regarding harmless error is *Commonwealth v. Story,* 383 A.2d 155 (Pa. 1978) where the Pennsylvania Supreme Court found that harmless error exists where "...uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict") In *Commonwealth v. Robinson,* 721 A.2d 344, (Pa. 1998), the Supreme Court restated the legal standard for analyzing harmless error:

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621 (1995) *citing Commonwealth v. Williams,* 524 Pa. 404, 573 A.2d 536 (1990).

*Id.* at 350.

45

In *Commonwealth v. Spotz*, 84 A.3d 294, (Pa. 2014), the Supreme Court recently clarified that the harmless error standard for PCRA relief is commensurate to "the *Strickland/Pierce* prejudice standard which, **in order to establish ineffective assistance of counsel, required defendant to show that his trial counsel's conduct had an actual adverse effect on the outcome of the proceedings...**" (Emphasis added) *Spotz* at p. 315. See also U.S.C.A. Const. Amend. 6; *Strickland v. Washington*, 466 U.S. 668 (1984); *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987).

In *Spotz*, the Superior Court first granted Mr. Spotz PCRA relief by vacating the conviction and remanding for a new trial. On review, the Supreme Court analyzed the alleged errors of trial counsel – failure to object to the prosecutor's confrontation with Mr. Spotz regarding his post-arrest silence (defendant's alleged failure to discuss a self-defense claim with police which implicated his 6th amendment right to remain silent) and counsel's failure to object to the prosecutor's subsequent closing argument raising the same issue. Additionally, trial counsel was also alleged to have failed to object to the trial judge's improper instruction regarding the defense of justification. Despite the gravity - the constitutional implication - of Petitioner's PCRA claims, the *Spotz* Court found that due to the over-whelming evidence of defendant's guilt, the errors by trial counsel were "not prejudicial" under the *Strickland/Pierce* standard. Therefore, the Superior Court's decision was reversed and remanded. *Spotz* remains good law.

46

Here, like *Spotz*, the record regarding Petitioner's guilt was overwhelming. However, unlike *Spotz*, the allegations of error were not of constitutional dimension (no repetitive sixth amendment right violation), rather Attorney Monahan's alleged error was one missed evidentiary objection to a hearsay statement as to defendant's "bad act" from ten years ago. Thus, the alleged error was a failure to seek relief regarding an alleged violation of a rule of evidence. Further, the statement was not elicited by the prosecution through questioning, but rather appeared to be an unprompted statement by the prosecution's witness. Finally, the information was not fully developed, pursued by follow-up questions, referenced again, or used in closing argument by the prosecution. Thus, we find that under the *Strickland/Pierce* prejudice standard, the alleged error not nearly as grave as in *Sportz;* and, it was harmless and not prejudicial to Petitioner given the quality of all of the Commonwealth's evidence of guilt. Therefore, we make the same finding as the Supreme Court in *Spotz* - This PCRA claim, even if it had been properly developed by Petitioner, is not worthy of relief.

III. <u>Ineffective assistance failure to object to an illegal sentence</u>

Petitioner next argues that Counsel failed to object to our sentence. Petitioner avers that the Trial Court imposed an illegal sentence by not merging the sentence for possession with intent to deliver cocaine under 35 P.S. § 780-113(a)(30), with the sentence for possession with intent to

47

deliver methylenedioxy-methamphetamine ("MDMA"), also under 35 P.S. § 780-113(a)(30). Both drugs were seized from the black jacket on November 4, 2016. *See* Petitioner's Brief at 32.

As an aside, Petitioner misidentified the consecutive sentences in his brief, the first was for PWI cocaine and the second was PWI oxycodone. The sentence for PWI for MDMA was a concurrent sentence.

Petitioner claims that our aggregate sentence violated the Double Jeopardy Clause under the Fifth Amendment to the United States Constitution, as well as his Right of Due Process under the United States and Pennsylvania Constitutions. *See id.* at 33. He further argues that he was convicted of two offenses that are defined by the same statutory provision containing the same elements, namely 35 P.S. § 780-113(a)(30), and that as a result, the statutory elements are identical. *See id.* Moreover, Petitioner claims that the controlled substances were all derived from a single criminal act, recovered pursuant to the same search warrant. *See id.*

To better understand this claim, let us briefly discuss the sentencing issues. Regarding Docket Number 4301-2016, Petitioner was found guilty of the delivery of approximately one gram of cocaine on three separate occasions (August 3, 2016, August 17, 2016, and August 31, 2016). In addition, on each date, he was also found guilty of the independent crime of criminal use of a communication facility (Felony 3), for arranging the logistics of each drug deal by cell phone. Regarding Docket Number 0169-2017, Petitioner was

found guilty of possession with intent to deliver the various drugs found in the black jacket because of the massive quantity of drugs involved. Specifically, he was found guilty of PWI Cocaine (52.77 grams); PWI MDMA Ecstasy (47.44 grams); PWI Oxycodone (215 pills); PWI Xanax (61 pills); PWI Marijuana (66.36 grams). In addition, he was found guilty of drug paraphernalia related to packaging materials and a scale.

Clearly, Petitioner was a major drug dealer based the three hand-to-hand transactions and the quantity of drugs found at his residence on November 4, 2016.

It was also clear, given Petitioner's extensive prior record (which we will discuss in the next section), through most of his adult life Petitioner has chosen to support himself by dealing in drugs. Therefore, the sheer quantity and dangerousness of the drugs he was trafficking in 2016, and his prior record, established Petitioner has been a professional drug dealer throughout his adult life.

We sentenced the Defendant on the most serious charge (possession of 215 Oxycodone pills) to the bottom of the stand range of 72 months to 144 months. With regard to the possession with intent to deliver Cocaine at 52.77 grams, we again sentenced the Petitioner to the bottom of the standard range of 60 months to 120 months. We ran both sentences consecutive to each other for an aggregate sentence of 132 months to 264 months. We also felt that the aggregate sentence for those two felonies was

49

sufficient to address the Petitioner's criminality; therefore, we entered standard range sentences for each of the remaining felony charges and ran them all concurrent to the aggregate sentence.

Clearly, we had the authority to run standard range sentences for all of the felonies consecutive to each other, (three cocaine deliveries, PWI Cocaine (52.77 grams); PWI MDMA Ecstasy (47.44 grams); PWI Oxycodone (215 pills); PWI Xanax (61 pills); PWI Marijuana (66.36 grams), and three counts of criminal use of cell phone), which could have resulted in a standard range sentence which more than doubled the Defendant's original sentence. We thought our sentence was reasonable. Although the Defendant may not view our sentence as compassionate, we believed that by imposing consecutive sentences in the bottom of the standard range for only two of the separate and independent drug charges and running all of the other felony charges concurrent, we exercised appropriate restraint. Our sentence should be unassailable as an exercise of sentencing discretion.[5]

With respect to the concept of the merger of sentences, the General Assembly has directed that:

> No crimes shall merge for sentencing purposes unless the crimes arise from a **single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.** Where crimes merge for

---

[5] The Defendant was also given the benefit of RRRI because his prior record was one establishing professional drug dealing and not one of crimes of violence or sexual offenses which would make him ineligible for RRRI.

50

sentencing purposes, the court may sentence the defendant only on the higher graded offense.

See 42 Pa.C.S.A. § 9765 (emphasis added). Furthermore, merger is a non-waivable challenge to the legality of the sentence. See *Commonwealth v. Pettersen*, 49 A.3d 903, 911 (Pa. Super. 2012) (citing *Commonwealth v. Robinson*, 931 A.2d 15, 24 (Pa.Super.2007)). Our Courts have long held that where a defendant commits multiple distinct criminal acts, concepts of merger do not apply. See *Id*.

As a preliminary matter, we note that Petitioner's is challenging the legality of his imposed sentence as part of his PCRA and not on direct appeal.

It is well established that a decision to forgo direct appeal constitutes a waiver of all claims that could have been raised on direct appeal. *Commonwealth v. Brown*, 872 A.2d 1139, 1145 (Pa. 2005). In order to be eligible for post-conviction relief, the petitioner must establish that the allegation of error has not been waived. See 42 Pa.C.S. § 9543(a)(3). A claim of error is waived if the petitioner could have raised the issue at trial, on appeal, or in a prior post-conviction proceeding but failed to do so. See 42 Pa.C.S. § 9544(b); *Commonwealth v. Peterkin*, 649 A.2d 121, 124 (Pa. 1994), cert. denied, 515 U.S. 1137 (1995); *Commonwealth v. Roman*, 730 A.2d 486 (Pa. Super. 1999).

Generally, an attack on the discretionary aspects of a sentence must be raised on appeal or it is waived. "It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." See *Commonwealth v. Austin,* 66 A.3d 798, 807–08 (Pa.Super.2013). It is also well settled that the sentencing judge has the discretion to determine whether to impose concurrent or consecutive sentences to other sentences then imposed. See *Commonwealth v. Mastromarino,* 2 A.3rd 581, 588-589 (Pa. Super. 2010), appeal denied 14 A.3rd 825 (Pa. 2011). Imposing consecutive sentences, by itself does not present a substantial question concerning the discretionary aspects of sentencing. *Id.; Commonwealth v. Zirkle,* 107 A.3d 127, 134 (Pa. Super 2014) (defendant is not entitled to a "volume discount because the various crimes occurred in one continuous spree."). Finally, to pursue an appeal of the discretionary aspects of a sentence, the appellant must satisfy a four-part test: (1) file a timely notice of appeal; (2) properly preserve claim at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. See *Commonwealth v. Moury,* 992 A.2d 162, 170 (Pa.Super.2010)

However, Petitioner is correct that if he has received consecutive sentences, that by law should have merged, he may pursue his claims under the PCRA.  See *Commonwealth v. Lehr,* 583 A.2d 1234 (Pa. Super 1990).

At issue are a challenge to two (2) violations of 35 Pa.C.S.A. § 780-113(a)(30): possession with intent to deliver 52.77 grams of cocaine and possession with intent to deliver 215 pills of oxycodone.  As mandated by the General Assembly, both drugs are Schedule II controlled substances (*see* 35 P.S. § 780-104(2)(i)(4)).  These violations occurred on the same day – November 4, 2016 - and that items of contraband (Cocaine and Oxycodone) were found stored within the same black jacket, in separate packaging and in separate pockets/compartments of the jacket.  Thus, we reduce Petitioner's argument to this claim: The different Schedule II drugs, were found the same day and hidden in the same coat; therefore, this court was required to merge both convictions.

Unfortunately for Petitioner, this is a flawed argument because cocaine and Oxycodone are different drugs with distinct chemical structures.  Thus, it stands to reason, each offense Petitioner was convicted of included an element that was mutually exclusive of the other, *i.e.,* the particular controlled substance with its distinct chemical composition.  In *Commonwealth v. Swavely,* 554 A.2d 946, 949 (Pa. Super. 1989), the Superior Court found that the imposition of separate consecutive sentences for delivery of two different prohibited narcotics (Tuinal and Talin) in a single

53

sale and in a single package did not violate double jeopardy or the merger doctrine. Specifically, Swavely rejected the argument that different drugs delivered at the same time constituted one crime. Id. at 949- 952. *Swavely* explicitly distinguished defendant Swavely's two different, and completely separable, pills from "the delivery of a mixture or compound, in a single unit" - like we often see today in heroin and fentanyl mixtures. *Id.* at 951. *Swavely* continues to be good law.

Here, Petitioner kept his different drugs, in different packaging, and in different pockets of his coat. Thus, the evidence established that the Petitioner was careful to distinguish and segregate his inventory, as they were different products for sale.

Therefore, although Petitioner's offenses arose on the same day, from the same criminal act, *i.e.,* contraband derived from the same search warrant and found within the same coat, all of the statutory elements of one offense are not included in the statutory elements of the other offense because these offenses relate to different controlled substances. *See* 42 Pa.C.S.A. § 9765. Thus, merger is not required in the case at bar.

Having established that Petitioner's claim challenging the legality of his sentence is without legal support, we also find that Petitioner's ineffective assistance of counsel claims must also necessarily fail. *Commonwealth v. Cooper*, 941 A.2d, 655, 664.

54

Finally, we feel the need to also note that, even if we are wrong and our sentence is eventually deemed to be flawed because the separate sentences should have merged, ultimately it would be of no benefit to Petitioner. At the sentencing proceeding we discussed our theory for sentencing Petitioner – our sentencing scheme. If our sentence would be vacated and Petitioner remanded for a new sentence, we can easily accommodate our sentencing scheme by imposing a second aggregate sentence in the same duration, by running the three sentences for the controlled buys (three separate felony deliveries set by cell phone communication) occurring on August 3, 16, and 31 of 2016, with the PWI of Oxycodone.

It is well-established that if an alteration of a sentence by an appellate court disturbs the overall sentencing scheme of the trial court, the proper practice is to remand to the sentencing judge, to allow the trial court to correct the sentence within the framework provided by the appellate court. See *Commonwealth v. Dobbs*, 682 A.2d 388, 393 (Pa. Super. 1996); *Commonwealth v. Rivera*, 2014 WL 2988386, *4 (Pa. Super. July 3, 2014); *Commonwealth v. Tanner*, 61 A.3d 1043, 1048 (Pa. Super. 2013). For example, *Dobbs, supra*, the Superior Court found that to avoid upsetting the sentencing scheme of the trial court, the better practice would be for the appellate court to remand the case to the trial court for resentencing rather than amending the sentence directly. Moreover, in *Commonwealth v.*

55

*Bartrung*, 732 A.2d 1287, 1289 (Pa. Super. 1999), our Superior Court examined whether it is appropriate for the PCRA court to resentence a Defendant on all counts, even where a defendant's PCRA claim has attacked only one portion of a defendant's sentence as illegal. In holding that the PCRA court did not err in vacating the entire sentence, court adopted the following analysis:

> Furthermore, this Court has held that when an illegal sentence has been imposed, the sentence must be corrected. Likewise, we have held that if a trial court errs in its sentence on one count in a multi-count case, then all sentences for all counts will be vacated so that the court can resentence its entire sentencing scheme. This has been held true even where [a defendant] specifically limits his appeal to one particular illegal sentence based on one bill of information and does not appeal sentences based upon other bills of information, where those sentences are part of a common sentencing scheme.

*Bartrung*, 732 A.2d at 1289 (internal citations omitted).

As a result, under Pennsylvania law, if this matter is remanded for resentencing, we have the ability to resentence the Defendant on all charges, within the framework provided by existing case law, in order to maintain the prior sentencing scheme.

IV. <u>Ineffective assistance failure to object to prior record score</u>

Petitioner claims that this Court erred in the calculation of his prior record score (PRS) and therefore the sentencing guidelines used to impose his sentence were incorrect. Thus, Petitioner asserts that counsel was

ineffective for failing to object to the calculation of Petitioner's PRS as it pertains to his Federal, New Jersey and Pennsylvania prior offenses. *See* Petitioner's Brief at 34.

Ultimately, Petitioner argues that no factual basis existed for concluding that Petitioner's Federal and New Jersey convictions were the equivalent to a Pennsylvania felony. Thus, Petitioner argues that his PRS should have been a three (3). *See id at 36.* For these reasons, Petitioner claims that counsel was ineffective. *See id.* However, once again, Petitioner failed to introduce any evidence, testimony, or legal argument supporting his bald claims.

A review of the Commonwealth of Pennsylvania Commission on Sentencing manual indicates that the Petitioner's PRS is a five (5), which is the maximum possible prior record score absent a Repeat Violent Offender Category (REVOC) of a Repeat Felony Offender (RFEL), which are inapplicable in the instant case.[6] We based our calculation on the unchallenged information presented to the Court by the Adult Probation Department in Petitioner's Pre-sentence Investigation. Adult probation reached the same conclusion we have – Petitioner's prior record score is five

---

[6] The Federal cocaine distribution conviction (with an 18 – 36 month sentence) counts as a PRS of 2. The 2010, Easton, Pa conviction for felony 2 firearms violation carries a PRS of 2. New Jersey felony conviction for Prohibited Weapons is a Pennsylvania equivalent (18 PS § 908) Prohibited Offensive Weapon (M-1) and carries a PRS of 1. In addition, Petitioner has 4 additional misdemeanor convictions constituting a PRS of 2. Fortunately for Petitioner, his maximum PRS can only be a 5.

(5). The Petitioner's pre-sentence investigation demonstrates the following

prior convictions, *inter alia*:

| Date | Offense | Disposition | Score |
|------|---------|-------------|-------|
| 3/22/2000<br><br>DEA (Federal) | Conspiracy to Distribute Cocaine and Marijuana | On 4/6/2001, Petitioner pled guilty and was sentenced to 18 months to 3 years in Federal Prison | [Other] Felony Drugs: (1) x 2 = 2 |
| 8/9/2020<br><br>Easton, PA | Possession and/or Distribution of a Small Amount of Marijuana | On 2/1/2002, Petitioner pled guilty to the charge and received court costs and fines | Other Misd. #1 |
| 2/16/2004<br><br>Wilson, PA | Criminal Attempt (F1) (2 Counts), Aggravated Assault (F2) (2 Counts), and Recklessly Endangering Another Person (M2) (2 Counts) | On 8/9/2004, Petitioner pled guilty to Recklessly Endangering Another Person and was sentenced to a period of 6-23 months of confinement | Other Misd. #2 |
| 3/9/2006<br><br>Easton. PA | Persons not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms and/or Distribution of Small Amount of Marijuana (M) and Use of Drug Paraphernalia (M) | On 4/9/2007, Petitioner pled guilty to Use of Drug Paraphernalia and received court costs and fines | Other Misd. #3 |
| 3/14/2009<br><br>Easton, PA | Possession with Intent to Deliver (F) (3 Counts), Person Not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms (F2), and Possession of a Controlled Substance (M) (3 Counts) | On 11/24/2010, Petitioner pled guilty to Person Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms (F2) and was sentenced to a period of 30-60 months incarceration at a State Correctional Facility. All other charges were withdrawn | [Other] Felony 2 Offenses: (1) x 2 = 2 |
| 11/21/2009<br><br>Wash. Twsp.,<br><br>New Jersey | Prohibited Weapons/Devices (F) | On 12/12/2011, Petitioner pled guilty to Prohibited Weapons/Devices and was sentenced to a one year flat sentence of imprisonment | [Other] Felony 3 Offenses: (1) x 1 = 1 |
| 6/11/2010<br><br>Allentown. PA | Robbery-Inflict or Threaten Bodily Injury During Course of Committing a Theft (F2), Theft by Unlawful Taking (M1), Receiving Stolen Property (M1), Commit any Crime of Violence with Intent to Terrorize Another (M1), and Simple Assault (M1) | On 11/18/2010, Petitioner was found guilty on charges of Theft by Unlawful Taking (M1) and Receiving Stolen Property (M1) and was sentenced to a period of 4-24 months of incarceration at a State Correctional Facility. Petitioner was found not guilty on all other charges | Other Misd. #4 |

58

By adding Petitioner's prior in-state and out-of-state felonies alone, without consideration of his four separate misdemeanor convictions, Petitioner's PRS is a five (5) and was accurately calculated.

Petitioner did not submit any evidence to contradict his prior record, other than his bald assertion that the Federal and New Jersey convictions should not have been graded as felonies. Clearly, both appear to be equivalent felony convictions to Pennsylvania's criminal statutes. The Federal conviction (a first offense drug distribution) required one and a half to three year sentence. The New Jersey prohibitive weapons offense was graded as a felony and, if it involved a firearm, it is an equivalent Pennsylvania felony. However, even if the New Jersey felony conviction can be argued to be a misdemeanor (because the sentence imposed was a one year flat sentence) **and** we allowed the Federal drug distribution conviction to be graded as a Pennsylvania felony 3 drug conviction, his PRS is still a 5 – 2 pts. Pennsylvania felony drug conviction; 1 pt. Federal drug distribution conviction; 1 Pt. New Jersey Probative Offensive Weapon (misdemeanor 1 Pennsylvania equivalent); 2 pts for 4 additional Pennsylvania misdemeanor convictions. The calculation is 6; however, the Pennsylvania scoring system stops counting at 5, so the Petitioner gets the benefit of the ceiling.

Petitioner's ineffective assistance of counsel claim, alleging that Attorney Monahan failed to object to Petitioner's erroneously calculated prior record score, is without merit, no matter which calculation one uses.

59

## CONCLUSION

Based on the foregoing, we conclude that Petitioner's claim seeking relief under the Post-Conviction Relief Act are dismissed.

BY THE COURT:

**STEPHEN G. BARATTA, J.**